**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

NICOLE LYNN MEECE, # 07881-509, *
                                  *
     Petitioner,           *
                                  * CRIMINAL NO. 20-00123-JB-B
vs.                               * CIVIL ACTION NO. 23-00056-JB-B
                                  *
UNITED STATES OF AMERICA,    *
                                  *
     Respondent.         *

## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Nicole Lynn Meece's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. 354). This matter has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Proceedings.[1] Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[2] Upon consideration, the undersigned hereby recommends

---

[1] Chief United States District Judge Jeffrey U. Beaverstock presided over the proceedings in this case. The undersigned has reviewed Petitioner Meece's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Chief Judge Beaverstock.

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record. Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989).

that Petitioner Meece's § 2255 motion be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Meece.  The undersigned further recommends, in the event Petitioner Meece requests a certificate of appealability and seeks to appeal *in forma pauperis*, that said requests be **DENIED**.

### I.    BACKGROUND

Petitioner Nicole Lynn Meece ("Meece") was indicted in October 2020 and charged with conspiracy to possess with intent to distribute more than fifty grams of methamphetamine (count one) and attempting to distribute more than fifty grams of methamphetamine (count three).  (Doc. 15).  Following her arrest in the Northern District of Georgia, Meece was released on conditions, including the condition that she participate in a program of home incarceration with location monitoring.  (Docs. 41, 43, 113).  In March 2021, Meece removed her ankle monitor, absconded from supervision, and was subsequently arrested in the Eastern District of Kentucky.  (Docs. 141, 154, 156).  Meece's conditions of release were revoked, and she was remanded to the custody of the United States Marshal pending the outcome of the case.  (Docs. 160, 163).

In August 2021, Meece pled guilty to counts one and three of the indictment without a plea agreement and was adjudicated guilty of those offenses.  (Docs. 218, 343).  At Meece's change-of-plea

hearing, the Court asked counsel for the Government to state the facts that the Government would expect to prove at trial. (Doc. 343 at 8). Counsel responded:

> In this case, the government expects that the evidence would show that the -- a co-conspirator, William Carver, was arrested in July of 2020 in possession of approximately 84 grams of methamphetamine ice or methamphetamine actual and a firearm in Mobile County.
>
> Carver gave a statement after being advised of his rights, describing the organization from which he had obtained approximately 30 kilograms of methamphetamine ice over time.
>
> The information that Carver gave about the organization and its members and the methods he used to obtain methamphetamine from them was corroborated with information obtained from Carver's cell phone.
>
> Carver agreed to conduct a controlled purchase of methamphetamine ice, and that event occurred on or about August the 19th of 2020. Carver contacted co-defendant, Brady [Colton] Burris, and the defendant, using his cell phone to arrange for the delivery of the drugs. The defendant texted Carver the address where he was to pick up the kilogram of methamphetamine ice from -- and that event occurred. It was delivered by co-defendants, [Aridai Monroy] Villanueva and [Damaris Yanes-]Padilla.
>
> The defendant was to text through -- I'm sorry. Carver was to text the defendant a certain amount of currency for her participation in arranging for the delivery of that quantity of methamphetamine through her cash app on her cell phone.
>
> When co-defendant, Burris, and the defendant were arrested in September of 2020, Burris gave a post-Miranda statement, admitting involvement in the scheme to provide meth to Carver and others for distribution and the methamphetamine -- the kilogram that was provided to Burris on August the 19th of 2020 was provided to him so that he could return to Mobile and distribute it here.

> The defendant also engaged in flight during her pretrial release. That evidence would be admissible as evidence of guilt should she insist on her trial.
>
> The government understands that the defendant contests the amount of methamphetamine actual for which she is accountable, but the defendant must admit that it was more than 50 grams of methamphetamine in order to plead guilty to these two offenses.

(Id. at 9-10). The Court then asked Meece: "[D]id you, in fact, commit the acts and do the things the government has alleged?" (Id. at 11). Meece replied: "Yes, sir." (Id.).

Before Meece's sentencing, a probation officer prepared a draft presentence investigation report ("PSR"). (Doc. 252). The draft PSR found that Meece's base offense level was 38 because her offense involved 30 kilograms of methamphetamine (actual). (Id. at 10). The draft PSR included no adjustments for specific offense characteristics, victim impact, role in the offense, or obstruction of justice, but Meece received a three-level reduction for acceptance of responsibility, making her total offense level 35. (Id.). Based on a total offense level of 35 and a criminal history category of III, the draft PSR placed Meece's guideline imprisonment range at 210 to 262 months. (Id. at 15).

In response to the draft PSR, Meece's attorney, Michael Hickman ("Hickman"),[3] filed a sentencing position stating that

---

[3] The Court originally appointed attorney William Bradford to represent Meece in this case. (Doc. 39). In June 2021, Bradford,

Meece adopted the draft PSR in its entirety. (Doc. 269). In its sentencing position pleading, the Government took the position that Meece should receive a two-point offense level increase under U.S.S.G. § 3C1.1 for obstructing or impeding the administration of justice when she removed her ankle monitor and fled while on conditions of release.[4] (Doc. 271).

The probation officer agreed with the Government and revised the PSR to add a two-level enhancement under § 3C1.1 on the grounds that Meece's flight from supervision delayed the entry of her guilty plea and impeded the administration of justice. (Doc. 300 at 9-10; Doc. 301 at 1). Based on a total offense level of 37 and a criminal history category of III, the final PSR placed Meece's guideline imprisonment range at 262 to 327 months. (Doc. 300 at 15).

In response to the revised final PSR, Hickman filed a second sentencing position pleading objecting to the two-level enhancement for obstruction of justice. (Doc. 304). Hickman also filed a sentencing memorandum in which he argued for safety valve relief and a downward variance. (Doc. 303). In the sentencing

---

at Meece's request, filed a motion to withdraw from further representation of Meece. (Doc. 182). On June 14, 2021, the Court granted the motion and appointed Hickman to represent Meece. (Docs. 189, 190).

[4] The Government noted that Hickman had been consulted and did not agree with the Government's objection. (Doc. 271 at 2).

memorandum, Hickman argued that "factors listed in 18 U.S.C. § 3553(a) relating to both the nature and characteristics of the offense and the history and characteristics of the Defendant" supported a downward variance. (Id. at 3). Specifically, Hickman argued that Meece "played a minor role" in the offense because her "involvement in this case is limited to one text message with the confidential informant."[5] (Id. at 3-4). Hickman also argued that a downward variance was appropriate based on Meece's history and characteristics, namely, that Meece was an admitted drug addict who had no convictions for violent offenses. (Id. at 4). Hickman asserted that it was "obvious that [Meece's] criminal conduct stems from her addiction, not as a result of her being a danger to the community." (Id.). Hickman further argued that "a sentence between time served and 36 months" would provide just punishment for the offense, and he cited Meece's limited role in the offense and the sentences two of her co-defendants received in support of this argument. (Id. at 5-6). Hickman did not specifically request that Meece's offense level be decreased for her minor role in the offense under U.S.S.G. § 3B1.2, nor did he object to the absence of a minor role adjustment in the PSR. (See Docs. 303, 304).

---

[5] Hickman also acknowledged that "[i]t ha[d] been represented to [him] that [Meece] admitted to sending the confidential informant the buy location" when she gave a statement to the case agent. (Doc. 303 at 3).

At Meece's sentencing hearing on December 13, 2021, the following exchange occurred:

THE COURT: All right. I note there are no objections to the presentence report that have been filed. Are there any matters we need to take up regarding the content of the report, Mr. Hickman?

MR. HICKMAN: No, Your Honor. I did file a -- an amended, I guess, position regarding the sentencing factors. The probation officer amended the report after the initial report was done. It was amended and they added -- the government added two points for her removing the ankle monitor.

THE COURT: Right. And I saw your second position statement. I didn't take that as an objection, though, as to the, I guess, propriety of the addition; rather, I took it as, like, you didn't agree with it.

MR. HICKMAN: I guess that is a more accurate way to put it.

THE COURT: If I didn't take it correctly, I will hear you on why it shouldn't apply.

MR. HICKMAN: No, Judge. I think that's probably the more accurate way to consider it.

THE COURT: Okay. All right. Ms. Bedwell, anything from the United States that we need to --

MS. BEDWELL: Nothing further, Your Honor.

THE COURT: All right. Well, all right. Well, the Court will adopt the presentence report as published. I note that the guidelines have been accurately calculated, and we're going to walk through them right now.

We start with a base offense level of 38 because this offense involved 30 kilograms of methamphetamine actual. Ms. Meece receives a two-point enhancement for obstruction of justice because she willfully obstructed or impeded the administration of justice by absconding during her pretrial release. This produces an adjusted offense level of 40.

Ms. Meece is entitled to a three-level reduction for acceptance of responsibility, producing a total offense level of 37.

Ms. Meece has two criminal history points; however, she committed the instant offense while under a criminal justice sentence. So pursuant to Section 4A1.1(d) of the sentencing guidelines, two points are added. This yields a total criminal history score of four and places her in Criminal History Category III.

This yields the following advisory guideline ranges: For custody, the guideline range is 262 to 327 months. The guideline for supervised release is two to five years. The guideline fine range is 40,000 to ten million dollars per count. And I do note that Counts One and Three are grouped for the purposes of this calculation. And Ms. Meece is due to pay a special assessment in the amount of $100 on each count of conviction for a total of $200.

For the record, is there any objection to this calculation, Mr. Hickman?

MR. HICKMAN: No, sir, Your Honor.

THE COURT: Ms. Bedwell?

MS. BEDWELL: No, sir.

THE COURT: I will note also the presentence report indicates that Ms. Meece qualifies for the safety valve under the amendment -- or I'm sorry. Under the First Step Act. Although this is not actually contemplated or the guidelines haven't been adjusted to accommodate this, I do think it would be appropriate to give her credit for that.

Is there any objection to that from the United States?

MS. BEDWELL: No, sir.

THE COURT: Okay. Well, what I am going to do is I am going to leave the guidelines, as I've calculated them,

intact, but we will talk about that adjustment at the end.

(Doc. 344 at 2-5).

Hickman then addressed the Court and requested that the Court vary downward from the guidelines[6] based on Meece's limited role in the offense,[7] the relatively light sentences two of her co-defendants had received,[8] and the fact that she had a drug problem. (Id. at 6-8). The Court asked counsel for the Government to respond to Hickman's arguments, as follows:

---

[6] Hickman suggested that "the guidelines ought to be, in this instance, between the time that she's served and another 36 months" and asked the Court "to consider strongly giving [Meece] time served." (Doc. 344 at 6, 8).

[7] Hickman described Meece's role in the drug offenses as having "sent one text message to a confidential informant." (Doc. 344 at 6).

[8] Hickman contrasted Meece's guideline imprisonment range of 262 to 327 months with the much shorter sentences received by two co-defendants, who, according to Hickman, Meece "had never met, never had any dealings with [and] are actual bona fide drug dealers" who "were caught in actual possession of over 800 grams of methamphetamine" after attempting to flush it down a toilet. (See Doc. 344 at 6-7). Hickman noted that one of these co-defendants "received time served on a misprision of a felony charge even though she is found in essentially a drug den with ten cell phones . . .; a ledger outlining multiple sales of methamphetamine and heroin to multiple people in the Atlanta area; as well as . . . some scales for measuring out drugs." (Id.). Hickman stated that the other co-defendant "actually sold one kilogram of methamphetamines to the confidential informant. She sat down in a car with this guy and sold one kilogram of this stuff to him and received $12,500 in cash, counted it out, went on her merry way. She gets a grand total of 36 months. And the government wants some 260-some-odd months out of Nicole. She sent one text in this case, Your Honor." (Id. at 7).

THE COURT: So Mr. Hickman argued -- I mean, he didn't -- hasn't asked, on paper anyway, for an adjustment as a minor role, but I think that's kind of what I heard him saying.

What do you say to that?

MS. BEDWELL: I think had the objection been filed, I think the government could have addressed that with additional information, which my recollection is the telephone records reflected previous contacts with this defendant. So it wasn't as if it was just one incident. The undercover incident that the agents traveled to Atlanta to participate in.

The telephone -- my recollection is the telephone reflected prior contacts with this defendant. The cooperating conspirator which is identified as CC-1 in the factual résumé had previous contacts with this defendant. Her role was the same. It was that of passing information to Burris. But there was more than one instance, as suggested by counsel and as reflected in the report, because we were not prepared to address a role adjustment since no formal objection was filed.

(Id. at 14-15). The Government requested a sentence at the low end of the guideline range after a safety valve adjustment had been applied. (Id. at 12-14).

The Court granted Meece safety valve relief and reduced her offense level by two levels, resulting in a guideline imprisonment range of 210 to 262 months. (Id. at 18-19). The Court then varied downward from that range and sentenced Meece to 188 months in prison, consisting of concurrent 188-month terms as to counts one

and three.  (Id. at 20-21).  Neither party objected to the sentence.  (Id. at 23-24).[9]

On December 15, 2021, Hickman filed a notice of appeal on Meece's behalf and moved to withdraw from the case.  (Docs. 314, 315).  The Court granted Hickman's motion to withdraw and appointed new counsel to represent Meece on direct appeal.  (Docs. 321, 322).  Meece's appellate counsel initially filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no arguable issues of merit on appeal.  (Doc. 357-1).  However, the Eleventh Circuit Court of Appeals ordered Meece's appellate counsel to file a brief addressing an arguably meritorious sentencing issue concerning Meece's criminal history score.  (Doc. 357-2).  On December 21, 2022, after briefing had been completed, the Eleventh Circuit affirmed Meece's sentence but remanded the case to the district court with instructions to correct clerical errors in the judgment.  (Doc. 351).

Shortly thereafter, Meece filed the instant § 2255 motion asserting two grounds for relief.  (Doc. 354).  The Government filed a response in opposition (Doc. 357), and Meece filed timely replies.  (Docs. 358, 359).  Thus, Meece's § 2255 motion is ripe for review.

---

[9] The Court entered a judgment consistent with the pronounced sentence on December 14, 2021.  (Doc. 316).

11

## II.  LEGAL STANDARDS

### A. Habeas Standard.

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008 WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008).

### B.  Ineffective Assistance of Counsel Standard.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) counsel's poor showing prejudiced her defense because there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been

different.  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  The petitioner bears the burden of proving her ineffective assistance claim, and she must meet her burden on both prongs to succeed.  Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010). A court "need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa."  Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (internal citation omitted).

With regard to the first prong, the proper measure of attorney performance is whether counsel's performance was objectively reasonable under prevailing professional norms considering all the circumstances.  Hinton v. Alabama, 571 U.S. 263, 273 (2014) (per curiam).  This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90.  To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action.  Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010).

To establish prejudice under Strickland, the petitioner must show more than that the alleged errors had "some conceivable effect on the outcome of the proceeding."  Marquard v. Sec'y for Dep't of Corr., 429 F.3d 1278, 1305 (11th Cir. 2005) (quotation omitted). Rather, the petitioner "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

### III. DISCUSSION

#### A. Ground One.

In ground one of her § 2255 motion, Meece claims that Hickman was ineffective for failing to seek a minor role adjustment under U.S.S.G. § 3B1.2. (Doc. 354 at 4). The Government counters that Hickman rendered constitutionally adequate performance, and that Meece has not shown that she was prejudiced by her attorney's decision not to seek a minor role adjustment. (Doc. 357 at 6-12).

Section 3B1.2(b) of the sentencing guidelines provides for a two-level reduction to a defendant's offense level if the defendant was a minor participant in the criminal activity. U.S.S.G. § 3B1.2(b). A minor participant is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." Id. cmt. n.5. "In determining whether a minor-role adjustment applies, the district court should consider, first, the defendant's role in the relevant conduct for which [she] has been held accountable at sentencing, and, second, [her] role as compared to that of other participants in [her] relevant conduct." United States v. Moran, 778 F.3d 942, 980 (11th Cir. 2015). "The fact that a defendant's role may be less than

14

that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." United States v. Rodriguez De Varon, 175 F.3d 930, 944 (11th Cir. 1999) (en banc). A defendant "bears the burden of proving her minor role by a preponderance of the evidence." United States v. Wright, 862 F.3d 1265, 1278 (11th Cir. 2017).

In support of her contention that Hickman "should have sought a minor role adjustment under USSG 3B1.2," Meece asserts that the criminal complaint and PSR reflect that her participation in the offenses was limited to sending a single text message stating "Okay" in response to the confidential informant's request that she tell co-defendant Brady Colton Burris[10] to send him the address where he was to purchase methamphetamine.[11]   (Doc. 358 at 1-3).

---

[10] The criminal complaint referred to Meece as Burris' "wife." (Doc. 1-1 at 10).

[11] Specifically, Meece notes that her "name is not mentioned until Point 24" of the criminal complaint. (Doc. 358 at 1-2). Paragraph 24 of the complaint stated that the confidential informant contacted Meece on Burris' phone and requested that Meece tell Burris to send him an address to pick up the methamphetamine. (Doc. 1-1 at 10). According to the complaint, Meece responded "Okay," and the confidential informant received an address shortly thereafter. (Id.). Meece further states that she "is not mentioned again [in the complaint] until Point 34-36 for a total of 5 times." (Doc. 358 at 2).

According to Paragraph 34, the confidential informant called Burris after he had completed the drug purchase. (Doc. 1-1 at 14). During the call, the confidential informant indicated that

Meece asserts that "[t]here is no evidence in any of the discovery provided by the Government showing that [Meece] had any involvement whatsoever with [co-defendants] Yanes-Padilla, Villanueva or Solis." (Id. at 3). Meece further contends that she played a minor role in the offense because she "did not meet with [the] confidential informant, did not [sell] any methamphetamine to anyone, did not purchase or deliver drugs to anyone, [and] did not profit [in] any way." (Id.).

---

"he was glad [Meece] had helped him when he said, 'I'm glad Nikki loves me though' because [Meece] had made the phone calls to facilitate the purchase and passed the address that allowed [the confidential informant] to meet with the people who sold him the kilogram of methamphetamines." (Id. at 15). Per Paragraph 35, Burris responded to the confidential informant's statement by arguing, "That was me at the end," and "I was the one that made it happen," meaning that he wanted the confidential informant to know that he was ultimately responsible for making the deal happen. (Id.). Per Paragraph 36, the confidential informant responded that he was paying Meece because "[s]he did all the work" and asked for Meece's Cash App information so that he could send her the $500 transaction fee. (Id.). Burris replied, "The last five minutes was me, dog," meaning that he wanted the confidential informant "to know that it was really him that made the deal happen because he had gotten on the phone the last five minutes to make sure the methamphetamine deal actually happened." (Id. at 15-16).

Meece contends that "[i]n these points the [confidential informant] was trying to suggest Meece was responsible[;] however (Burris) was very clear he was responsible for the transaction an[d] not Meece, who only sent one text message during the entire transaction." (Doc. 358 at 2). However, the Court notes that during her guilty plea colloquy, Meece admitted under oath that she "texted [the confidential informant] the address where he was to pick up the kilogram of methamphetamine ice from." (Doc. 343 at 10-11).

In response, the Government argues that Hickman made the reasonable strategic decision to advocate for a downward variance based on several factors, including Meece's role in the offenses, instead of seeking a formal minor role reduction under § 3B1.2. (Doc. 357 at 6). The Government contends that by directing the Court's attention to Meece's limited role in the offenses without formally moving for a minor role adjustment under the guidelines, Hickman raised the issue in a manner that was less likely to trigger the Government to present aggravating evidence concerning her offense conduct. (Id. at 8). The Government asserts that Hickman's strategy was successful, since Meece received a downward variance, and the Government did not present additional evidence of her role in the offenses that could have led to a higher sentence. (Id. at 8-9).

As detailed above, Hickman argued for a downward variance based on the sentencing factors set forth in 18 U.S.C. § 3553(a) relating to the nature and circumstances of the offense and Meece's history and characteristics, but he did not formally seek a minor role reduction under § 3B1.2. Hickman argued that "Meece played a minor role in this offense" because her involvement was limited to responding "Okay" when the confidential informant texted her and asked her to tell Burris to send him the address where he was to pick up the methamphetamine. (Doc. 303 at 3; Doc. 344 at 6-7).

Hickman contrasted this with the roles of certain co-defendants who had received sentences significantly below Meece's advisory guideline range. (Doc. 303 at 3-5; Doc. 344 at 6-7). For example, Hickman noted that Villanueva, who "actually sold one kilogram of methamphetamines to the confidential informant" and was later found with more methamphetamine, received "a grand total of 36 months" in prison. (Doc. 344 at 7). With regard to Meece's history and characteristics, Hickman noted her admission that she is a drug addict, pointed out her lack of convictions for violent offenses, and argued that it was "obvious that her criminal conduct stems from her addiction, not as a result of her being a danger to the community." (Doc. 303 at 4; Doc. 344 at 7-8). Based on Meece's "minor role" in the offense, her personal history and characteristics, and the sentences imposed on her co-defendants, Hickman argued that the Court should grant a downward variance and impose a sentence between time served and 36 months. (Doc. 303 at 5; Doc. 344 at 6). Hickman's arguments for a lower sentence were partly successful. After the Court granted Meece safety valve relief and reduced her offense level by two levels, the low end of her guideline imprisonment range was 210 months. (Doc. 344 at 18-19). The Court then varied downward from that range and sentenced Meece to 188 months in prison. (Id. at 20).

The undersigned notes that strategic decisions "made after thorough investigation of law and facts relevant to plausible

options are virtually unchallengeable." <u>Strickland</u>, 466 U.S. at 690.  When a court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance without an evidentiary hearing." <u>Gordon v. United States</u>, 518 F.3d 1291, 1302 (11th Cir. 2008).  Here, Meece's ineffective assistance of counsel claim must fail because there were reasonable strategic motives for Hickman's decision to pursue a downward variance based on the § 3553 factors rather than formally seeking a minor role reduction under § 3B1.2.

As noted, the Government maintains that Hickman's strategy was reasonable because, by asking for a downward variance without formally moving for a minor role reduction under the guidelines, Hickman directed the Court's attention to Meece's limited role but did so in a fashion that was less likely to lead the Government to present aggravating evidence of her offense conduct.  (Doc. 357 at 8).  Relatedly, the Government notes that Meece would have had the burden to establish her minor role by a preponderance of the evidence, and it "is far from clear that" the story of Meece's offenses "would have been flattering to Meece."  (<u>Id.</u> at 9).  Indeed, as noted by the prosecutor at sentencing, the record reflects "the massive amount of methamphetamine that was distributed through this conspiracy, [Meece's] close relationship with the principal distributor [i.e., Burris], [and] her presence at the residence where that distribution activity acted as a hub

– whether or not drugs were stored there, that's where the orders were taken[,] information was passed[, and] meetings took place." (Doc. 344 at 14).  The prosecutor also noted at sentencing her recollection that telephone records reflected previous contacts between Meece and the confidential informant but stated that she was "not prepared to address a role adjustment since no formal objection was filed."  (Id. at 15).

It is also notable that Hickman asked the Court to vary downward significantly based on the § 3553 factors and impose a sentence between time served and 36 months.  It appears that this range was purposefully chosen based on the sentences some of Meece's co-defendants (whose offense conduct was at least arguably more substantial than Meece's) received.[12]  This strongly suggests that Hickman made the strategic decision not to pursue a two-level minor role reduction to Meece's guideline range - which would have required Meece to establish her minor role by a preponderance of the evidence and would likely have caused the Government to present evidence in opposition to the reduction - and instead chose to pursue a much more significant downward variance based on several mitigating factors that included, but were not limited to, Meece's role in the offense.

---

[12] The record reflects that Villanueva was sentenced to 36 months' imprisonment, while Yanes-Padilla and Solis were sentenced to time served.  (Docs. 305, 307, 345).

Thus, the Government's arguments that Hickman's performance was reasonable are well taken. While it is possible that Meece could have received a lower sentence had Hickman pursued a formal minor role reduction, there were, as outlined above, reasonable strategic reasons for Hickman's decision to seek a downward variance based on the § 3553 factors rather than pursuing a minor role reduction of Meece's guideline range. Thus, Meece cannot show "that no competent counsel would have taken the action that h[er] counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc); see United States v. Burke, 2018 U.S. Dist. LEXIS 219495, at *18, 2018 WL 7051047, at *6 (W.D. Ark. Dec. 28, 2018) (finding that defense counsel "did not . . . act unreasonably in deciding not to seek a minor role reduction, but instead to seek a downward variance due to [the defendant's] personal history and characteristics"), report and recommendation adopted, 2019 U.S. Dist. LEXIS 47885, 2019 WL 1307742 (W.D. Ark. Mar. 22, 2019); United States v. Benitez-Lopez, 2022 U.S. Dist. LEXIS 12455, at *16-17, 2022 WL 204607, at *7 (D. Colo. Jan. 24, 2022) (finding "that petitioner's counsel did not act unreasonably in failing to seek a reduction under § 3B1.2 because counsel argued for a lower offense level and variant sentence based on other factors that he presumably thought would be more successful"), certificate of appealability denied, 2022 U.S. App. LEXIS 15470, 2022 WL 1930793 (10th Cir. June 6, 2022); Robertson v. United

States, 2017 U.S. Dist. LEXIS 130725, at *12, 2017 WL 5956865, at
*5 (S.D. Fla. Aug. 15, 2017) ("Movant's counsel moved for a
sentence below Movant's guideline sentencing range.  The fact that
Movant's counsel may not have also sought a minor-role reduction
is of no moment.  Indeed, the fact that counsel filed a sentencing
memorandum requesting a sentence below Movant's guideline
sentencing range cuts against Movant.  Specifically, the fact that
counsel filed a memorandum setting forth grounds for a sentence
below Movant's guideline evidences that counsel considered
possible grounds for such a request, and apparently did not think
a motion for a minor-role reduction was warranted.  And Movant
offers nothing that would rebut the presumption that counsel's
decision to make the request for a downward variance, and not one
for a minor-role reduction, was not made in the exercise of
counsel's reasonable professional judgment.  As such Movant cannot
establish deficient performance."), report and recommendation
adopted, 2017 U.S. Dist. LEXIS 196861, 2017 WL 5956866 (S.D. Fla.
Nov. 30, 2017).  Because Meece has not met her burden to show
deficient performance, she is entitled to no relief as to ground
one.[13]

---

[13] Since Meece has not established that her counsel performed
deficiently, the Court need not address whether she was prejudiced
by her attorney's actions.  See Holladay, 209 F.3d at 1248.

**B.    Ground Two.**

Meece describes ground two of her § 2255 motion as: "Incorrect Calculation of Total Offense Level."  (Doc. 354 at 5).  In support of this claim, Meece's motion states:

> Defendant was sentenced with a total offense level of 35 and Category III to 188 months.  With a 2 point role adjustment the guidelines would be total offense level 33 which makes the sentencing guidelines 168-210 months. The Government recommended appropriate sentence in this case is the low end of the advisory guideline range.

(Id.).  The Government counters that Meece's direct challenge to the Court's guideline calculations should be rejected because "(1) it is not cognizable in a § 2255 motion; (2) it is procedurally defaulted; and (3) it fails on the merits."  (Doc. 357 at 12).

Meece's claim that the Court incorrectly calculated her total offense level under the sentencing guidelines by failing to apply a two-point minor role reduction under § 3B1.2 is not cognizable in a § 2255 proceeding.  When a prisoner alleges that her "'sentence was imposed in violation of the . . . laws of the United States . . . or is otherwise subject to collateral attack,' 28 U.S.C. § 2255(a), a district court lacks the authority to review the alleged error 'unless the claimed error constitute[s] "a fundamental defect which inherently results in a complete miscarriage of justice[.]"'"  Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)).  "[A]ny miscalculation of

the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory." Id. at 1140; see also Martin v. United States, 81 F.3d 1083, 1084 (11th Cir. 1996) (per curiam) ("Because a defendant has the right to directly appeal a sentence pursuant to the Sentencing Guidelines, the defendant is precluded from raising Guidelines issues in collateral proceedings under § 2255."); United States v. Thomason, 940 F.3d 1166, 1173 (11th Cir. 2019) (noting that a defendant "cannot challenge the Guidelines calculation now because even if he had preserved this claim, it is not cognizable in a motion to vacate").

Here, Meece's 188-month sentence is well below the statutory maximum for her offenses. It is also below the allegedly erroneous guideline range calculated by the Court and within the guideline range that would have resulted had the Court applied a two-point minor role reduction. Moreover, Meece has alleged no fundamental defect inherently resulting in a complete miscarriage of justice. Accordingly, Meece's claim that the Court miscalculated her total offense level by failing to apply a minor role adjustment is not cognizable in this § 2255 proceeding.

Meece's claim is also procedurally defaulted. "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." Lynn, 365 F.3d at 1234; see also Greene

24

v. United States, 880 F.2d 1299, 1305 (11th Cir. 1989) ("In general, a defendant must assert an available challenge to a sentence on direct appeal or be barred from raising the challenge in a section 2255 proceeding."). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994) (per curiam).

If a defendant fails to pursue an available claim on direct appeal, she can avoid the procedural bar only by establishing one of two exceptions to the procedural default rule. "Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." Lynn, 365 F.3d at 1234 (emphasis in original). Under the second exception, a court will consider "a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam). To meet this standard, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Lynn, 365 F.3d at 1234 (quotation omitted).

In ground two, Meece challenges the district court's calculation of her offense level under the sentencing guidelines, specifically, the failure to apply a two-point minor role reduction under § 3B1.2. As previously discussed, neither Meece nor her

counsel objected to the Court's computation of her guideline offense level, including the absence of a minor role adjustment, during her sentencing hearing.[14] (See Doc. 344). Nor did Meece challenge the Court's calculation of her offense level, including the lack of a minor role reduction, on direct appeal. (See Docs. 351, 357-1, 357-2). Therefore, Meece is barred from raising her claim relating to the court's calculation of her total offense level in her § 2255 motion, unless she can show cause and prejudice or another exception to the procedural bar.

"[A] prisoner collaterally attacking [her] conviction can establish cause for a procedural default if [she] can show that 'some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule,' or that [her] attorney's performance failed to meet the Strickland standard for effective assistance of counsel." Reece v. United States, 119 F.3d 1462, 1465 (11th Cir. 1997) (citation omitted). As addressed previously, Meece has not shown that her sentencing counsel failed to meet the Strickland standard by not seeking a minor role reduction. Further, Meece has not even attempted to demonstrate cause or prejudice resulting from her failure to raise the issue on direct appeal. The second exception to the procedural default

---

[14] The only objection raised with respect to Meece's offense level was the objection in Meece's amended sentencing position pleading to the final PSR's addition of a two-level increase for obstruction of justice under § 3C1.1. (See Doc. 304; see also Doc. 344).

rule is also unavailing to Meece, since she has not alleged, much
less demonstrated, actual innocence.    Accordingly, Meece is
entitled to no relief as to ground two.[15]

### C.    Claims Raised in Replies to the Government's Response.

In her "Response to United States Opposition to the Motion to
Vacate" (Doc. 358), Meece raises new arguments that were not even
hinted at in her § 2255 motion.    Specifically, Meece's reply
states:

> In addition to the minor role adjustment Meece should
> obtain a 6 point reduction in her base level which would
> reduce Meece to offense level 27 Category III therefore
> reducing the guidelines to 87-108 months.
>
> The US Sentencing Guidelines use drug purity as a proxy
> for a defendant's culpability. The Guidelines say, in
> relevant part, "the fact that a defendant is in
> possession of unusually pure narcotics may indicate
> prominent role in the criminal enterprise and proximity
> to the source of drugs.  USSG § 2D1.1. As [illegible]
> the Guidelines make a distinction between
> "Methamphetamine" and "Actual Methamphetamine." All else
> equals, defendants caught with actual methamphetamine
> get longer sentences than defendants caught with
> methamphetamine mixture. "No other drug is punished more
> severely based on purity." United States v. Hayes (ND
> Iowa 2013).
>
> Meece should be eligible for a deviation from guidelines
> due to the fact the drug in question in this case had
> 94% purity. US v. Robinson (5th district Dec 2023).
>
> Some courts have noted that drug quantity, too, is a
> "poor proxy for culpability." US v. Johnson (MD Ala.
> 2019). They have observed that "while quantity can
> reflect culpability or a defendant's role in a scheme,

---

[15] Because Meece's second ground for relief is not cognizable in
this § 2255 proceeding and is procedurally defaulted, the Court
will not address the merits of the claim.

in many cases it does NOT do so." US v. Carrillo (ED Cal 2020).

With all these in account Meece's Guidelines would be offense level 27 Category III 87-108 months.

(Id. at 4-5).[16]

In her subsequently filed "Response Continued to United States Opposition to the Motion to Vacate" (Doc. 359), Meece raises an additional argument that she did not present in her § 2255 motion, as follows:

> The USSC also adopted a criminal history amendment that eliminates "status points or recency points" – additional criminal history points assessed if the defendant committed the current crime within two years of release for a prior crime.
>
> Ms. Meece was indeed given status points (2) for being on probation which listed her Criminal History Category as III. With the 2 points removed she should be in Criminal History Category II.

(Id. at 1-2).[17]

---

[16] Meece purports to raise these arguments in support of ground two of her § 2255 motion. (See Doc. 358 at 4-5). However, as noted above, nowhere in the § 2255 motion does Meece suggest that she should have received a reduction to her base offense level based on drug purity and/or drug quantity. (See Doc. 354).

[17] Two points were added to Meece's criminal history score pursuant to U.S.S.G. § 4A1.1(d) because she "committed the instant offense while under a criminal justice sentence [i.e., probation] for 17CR637-J." (See Doc. 300 at 11). "Section 4A1.1(d) requires a two-point enhancement 'if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.'" Rogers v. United States, 2013 WL 2367958, at *6 (M.D. Ga. May 29, 2013) (quoting U.S.S.G. § 4A1.1(d)).

As noted, Meece first argued in her replies to the Government's response that she should receive a six-point offense level reduction based on drug purity and/or quantity, and that her criminal history category should be reduced because she received two recency points despite an amendment eliminating such points. Because Meece did not raise these arguments in her § 2255 motion, these claims are waived. See, e.g., Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018) (per curiam) ("Oliveiri did not present this claim in his § 2255 motion, but rather raised it for the first time in his reply to the government's response. By doing so, he waived the claim."); McLellan v. United States, 2022 U.S. Dist. LEXIS 138666, at *10, 2022 WL 3129584, at *4 (S.D. Ala. Aug. 4, 2022) ("McLellan raised, for the first time, additional arguments in his Reply to the Government's Response. . . . However, these arguments are waived since they were not raised in his 2255 Motion."); United States v. Castleberry, 2020 U.S. Dist. LEXIS

---

"Prior to November 1, 2010, the Guidelines required a two-point recency enhancement 'if the defendant committed the instant offense less than two years after release imprisonment . . . .'" Id. at *5 (quoting U.S.S.G § 4A1.1(e) (2009)). "Effective November 1, 2010, the Guidelines eliminated the two-point recency enhancement pursuant to Amendment 742 of the Guidelines." Id. "Amendment 742 did not, however, apply to U.S.S.G. § 4A1.1(d)." Id. at *6. Thus, it appears that the Court correctly applied the two-point enhancement pursuant to § 4A1.1(d) because the record reflects that Meece was serving probation for a controlled substance conviction in Douglas County, Georgia, at the time she committed the instant offenses. Contrary to Meece's assertion, there is nothing in the record to indicate that "status points" were added pursuant to the eliminated recency points provision.

243510, at *26, 2020 WL 7753721, at *10 (N.D. Fla. Nov. 18, 2020) ("Because Castleberry did not raise the issue of [ineffective assistance of appellate counsel] in his section 2255 motion, it is deemed waived."), report and recommendation adopted, 2020 U.S. Dist. LEXIS 243019, 2020 WL 7711820 (N.D. Fla. Dec. 28, 2020).

Even assuming *arguendo* that the claims raised in Meece's replies had not been waived, they would fail for the same reasons as Meece's claim in ground two. Specifically, the arguments first raised in Meece's replies to the Government's response are merely an attack on the Court's interpretation and application of the sentencing guidelines and are therefore not cognizable under § 2255. See Thomason, 940 F.3d at 1173; Burke v. United States, 152 F.3d 1329, 1332 (11th Cir. 1998) (holding that a defendant's claim that his sentence was contrary to a subsequently enacted clarifying amendment to the guidelines is a non-constitutional issue that is not cognizable under § 2255 absent a complete miscarriage of justice); Crawford v. United States, 2023 U.S. Dist. LEXIS 117950, at *2, 2023 WL 4409130, at *1 (N.D. Tex. June 16, 2023) (concluding, where § 2255 motion requested "a six point reduction in the offense level due to drug purity" and alleged that "[t]he U.S. Sentencing Guidelines use drug purity as a proxy for a defendant's culpability," that petitioner's claim was not cognizable under § 2255), report and recommendation adopted, 2023 U.S. Dist. LEXIS 116670, 2023 WL 4409531 (N.D. Tex. July 7, 2023).

Moreover, Meece did not raise these claims before the district court or on direct appeal, and she has not demonstrated any basis for overcoming the procedural default of her belatedly raised claims.  Thus, even if Meece were permitted to amend her § 2255 motion to add these claims, no entitlement to relief would appear.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**.  See Rules Governing § 2255 Proceedings, R. 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability.  See 28 U.S.C. § 2253(c)(1).  A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds without reaching the merits of an underlying constitutional claim, a certificate of appealability "should issue [only] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

31

debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a habeas petition is denied on the merits of the underlying constitutional claims, a certificate of appealability may issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citation and internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

After reviewing the issues presented in light of the applicable standards, the Court concludes that reasonable jurists would not find the Court's disposition of Meece's claims wrong or debatable, and that none of the issues presented are adequate to deserve encouragement to proceed further. As a result, Meece is not entitled to a certificate of appealability and should not be permitted to proceed *in forma pauperis* on appeal.

## V. **CONCLUSION**

For the foregoing reasons, it is recommended that Petitioner Nicole Lynn Meece's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. 354) be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Nicole Lynn Meece.  It is further recommended that any requests for a certificate of appealability or for permission to appeal *in forma pauperis* be **DENIED**.

### **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper

objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **23rd** day of **October, 2024.**

                        **/s/ SONJA F. BIVINS**
                **UNITED STATES MAGISTRATE JUDGE**